COZEN O'CONNOR
BY:    Melanie A. Miller (MM 2992)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

Attorneys for Plaintiff
Celgene Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Celgene Corporation, | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No.: _____ |
| v. | : |
| | : |
| Amit Kumar, Anil Kumar, Farma Glow, Zatak Softech Pvt. Ltd., and DOES 1 through 10 | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

## COMPLAINT

Plaintiff, Celgene Corporation ("Celgene"), by and through its undersigned attorneys, for its complaint against Amit Kumar, Anil Kumar, Farma Glow, Zatak Softech Pvt. Ltd., and DOES 1-10 (collectively the "Defendants") alleges as follows:

### Parties

1.     Plaintiff Celgene is a Delaware corporation with a place of business at 86 Morris Avenue, Summit, New Jersey 07901.

2.     Defendant Amit Kumar is an Indian resident located at 12-B, Tower B3, Spaze I-Tech Park, Sohna Road, Sector 49, Gurugram, Haryana,  India, with email addresses at

bestcustomerteam.@gmail.com, help-desk@medsmartdrugs.net, farmaglow@rediffmail.com, and linuxzatak@gmail.com.

3. Defendant Anil Kumar is an Indian resident located at #672/18, Opp. Police Post, Khandasa Road, Gurgaon, India, with an e-mail address of farmaglow@rediffmail.com.

4. Defendant Zatak Softech Pvt. Ltd. is an Indian company located at 13-A, Tower B, Spaze I-Tech Park, Sohna Road, Gurugram, Haryana, India, with an email address at bestcustomerteam.@gmail.com.

5. Defendant Farma Glow is an Indian company located at #672/18, Opp. Police Post, Khandasa Road, Gurgaon, India, with an e-mail address at farmaglow@rediffmail.com.

6. Defendants own and control a number of websites, including Medsmartdrugs.net, USMedicinestore.com, Chemist247online.com, USPharmacy24.com, Bestgenericshop.com, USGenericshop.com, and USGenericshop.com, and the these websites are used to sell generic, unauthorized and unregulated lenalidomide to consumers into the United States and to improperly import generic, unauthorized and unregulated lenalidomide to United States consumers.

7. The true names and capacities, whether individual, corporate, associate, or otherwise of DOES are unknown to Celgene at this time and Celgene therefore sues the DOES under such fictitious names. When the true names, capacities, and activities of the DOES are ascertained, Celgene will amend this Complaint accordingly. Celgene is informed and believes and thereon alleges that all of the Defendants are responsible in some manner for the events and happenings referred to herein, and that Celgene's damages as alleged herein were proximately caused by the Defendants.

## Jurisdiction and Venue

8. This action arises under the Acts of Congress under the Trademark and Lanham Acts, Title 15 U.S.C. § 1051, *et seq.*, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law. A substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district. As such, the Defendants should reasonably expect that their activities might have consequences herein.

9. This Court has original jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

10. This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

11. The Defendants are subject to this Court's personal jurisdiction because, (1) they do substantial business in this district; and (2) they regularly solicit business from, do business with, and derive revenue from goods and/or services provided to customers in this district.

12. Venue is proper in this judicial district pursuant to Title 28 U.S.C. §§ 1391 (b) (2) and (c).

## Background as to Celgene's Business and Its Intellectual Property

13. Celgene is a global biopharmaceutical company which is the owner of all proprietary rights in and to the REVLIMID® drug.

14. The REVLIMID® drug is utilized in the treatment of various cancers. REVLIMID® fights abnormal cells in the bone marrow and allows normal cells to perform their functions. The active ingredient in REVLIMID® is called lenalidomide. REVLIMID® is used by patients with multiple myeloma (mm) and for patients with a condition called del 5q MDS and who require red blood cell transfusions to manage anemia (low red blood cell counts).

15. The REVLIMID® drug is approved by the Food and Drug Administration ("FDA"), subject to restricted distribution, and is currently available in the marketplace in the United States. The FDA has approved REVLIMID®, which is taken orally, for previously treated multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS).

16. Because of the potential toxicity of REVLIMID®, and in an effort to minimize the chance of fetal exposure to REVLIMID®, REVLIMID® is approved for marketing only under a special restricted distribution program approved by the FDA. This program is called REVLIMID REMS® in the United States. Under these restricted distribution programs, only prescribers and pharmacists registered with the program are allowed to prescribe and dispense REVLIMID®. In addition, patients must be advised of, agree to, and comply with the requirements of the REVLIMID REMS® program in order to receive REVLIMID®.

17. Celgene is the owner of all trademark rights in and to the REVLIMID® mark throughout the world, including the following registrations in the United States:

- U.S. Reg. No. 3,255,216 for REVLIMID covering "pharmaceutical preparations for the treatment of certain cancers" in International Class 5; and

- U.S. Reg. No. 2,925,808 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5.

18. Celgene's U.S. Reg. No. 2925808 for REVLIMID has acquired incontestable status. 15 U.S.C. §1065. Thus, the registration for this mark shall be conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

19. Celgene has expended significant time, energy and resources in the protection and promotion of its REVLIMID® brand throughout the world.

4

20. The effectiveness of the REVLIMID® drug, an immunomodulatory agent, for previously treated patients with multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS), and for patients who require red blood cell transfusions to manage anemia (low red blood cell counts) has delivered results in terms of treatment, and has resulted in significant commercial success.

21. Through Celgene's use of the REVLIMID® mark in connection with its drug, REVLIMID® has become associated in the minds of the public with Celgene.

22. Celgene's REVLIMID® mark is strong and it is inherently distinctive.

23. Celgene's REVLIMID® mark is famous and represents the exceedingly valuable goodwill of Celgene.

### Background as to the Defendants' Unlawful Conduct

24. Defendants advertise and sell branded and generic drugs to consumers throughout the United States through numerous websites.

25. Since at least as early as April 2, 2015, Defendants have been selling unauthorized, generic lenalidomide to consumers in the United States, including consumers in the District of New Jersey.

26. In 2015, Defendants operated a website entitled Drugsdropship24.com, which offered generic lenalidomide to customers in the United States.

27. On April 2, 2015, lenalidomide was purchased from Drugsdropship24.com by a customer in the United States, who was not registered with Celgene, and the customer received the unauthorized generic lenalidomide in New Jersey from the Defendants on April 27, 2015.

28. On May 15, 2015, Celgene, through its counsel, sent a cease and desist letter to the Defendants requesting that the Defendants cease and desist from directly and/or indirectly

infringing Celgene's REVLIMID® mark and cease all unauthorized distribution of generic unauthorized lenalidomide into the United States.

29. Sometime between May 15, 2015 and August 11, 2015, the website linked to Drugsdropship24.com was deleted.

30. In August 2016, Celgene became aware that the Defendants, despite being put on notice of Celgene's trademark rights in the REVLIMID® mark and of the FDA-mandated restricted distribution of lenalidomide, were using Celgene's REVLIMID® trademark in connection with advertising lenalidomide to consumers in the United States on the Medsmartdrugs.net website.

31. On August 15, 2016, lenalidomide was purchased from Medsmartdrugs.net by a customer in the United States, who was not registered with Celgene, and the customer received the unauthorized generic lenalidomide in New Jersey from the Defendants on September 16, 2016.

32. On November 18, 2016, November 20, 2016, November 21, 2016, November 29, 2016, December 13, 2016, and January 9, 2017 Celgene, through its counsel sent the Defendants correspondence requesting that the Defendants cease and desist from directly and/or indirectly infringing Celgene's REVLIMID® mark and cease the unauthorized distribution of generic lenalidomide into the United States to patients in the United States through the Medsmartdrugs.net website or otherwise.

33. On December 14, 2016, the Defendants advised Celgene that they would not sell any generic lenalidomide to customers in the United States without FDA permission.

34. On January 31, 2017, lenalidomide was ordered from Medsmartdrugs.net by a customer in the United States, who was not registered with Celgene, and the customer received the unauthorized, generic lenalidomide in New Jersey from the Defendants on March 8, 2017.

35. Despite receiving further notice of their infringing activities, the Defendants, through the Medsmartdrugs.net website, willfully continue to use the REVLIMID® mark without authorization and willfully continue to distribute lenalidomide without authorization and outside of the FDA-mandated restricted distribution program.

36. In March of 2017, Celgene became aware that the Defendants are also using Celgene's REVLIMID® mark and selling unauthorized, generic lenalidomide to customers in the United States through additional websites, including USMedicinestore.com, Chemist247online.com, USPharmacy24.com, Bestgenericshop.com, USGenericshop.com, and USGenericshop.com.

37. On April 3, 2017, Celgene, through its counsel, sent the Defendants correspondence requesting that the Defendants cease and desist from directly and/or indirectly infringing Celgene's REVLIMID® mark and cease all unauthorized distribution of generic, unauthorized lenalidomide into the United States through any of the Infringing Websites or otherwise.

38. Despite being put on notice of Celgene's intellectual property rights and the consumer safety hazards implicated by the sale and distribution of unauthorized, generic lenalidomide, Defendants have continued using REVLIMID® and selling generic and unauthorized lenalidomide, to consumers throughout the United States through numerous websites owned and operated Defendants, including Medsmartdrugs.net, USMedicinestore.com, Chemist247online.com, USPharmacy24.com, Bestgenericshop.com, USGenericshop.com, and USGenericshop.com (the "Infringing Websites").

39. The Infringing Websites are active and solicit business throughout the United States, and a variety of drugs, including lenalidomide, are offered for sale and sold through the

Infringing Websites to consumers throughout the United States, including consumers in the District of New Jersey.

40. The Defendants utilize, without authorization, the REVLIMID® mark in connection with the sale of unauthorized generic lenalidomide.

41. The Infringing Websites also use the REVLIMID® mark as a keyword on the websites and in connection with the sale of unauthorized generic lenalidomide.

42. By utilizing the search function of the Infringing Websites, a consumer can search for the term REVLIMID® and correspondingly purchase unauthorized and generic lenalidomide.

43. The Defendants are not registered or approved pharmacies under the United States restricted distribution program, REVLIMID REMS®.

44. The Defendants are dispensing unauthorized, generic lenalidomide to customers who are not registered with Celgene.

45. As such, Defendants are selling and distributing lenalidomide in contravention of REVLIMID REMS®, the restricted distribution program mandated by the US Food and Drug Administration ("FDA").

46. The Defendants' distribution of unauthorized, generic lenalidomide creates serious health, safety, and consumer protection issues.

47. The orders for lenalidomide placed, processed and completed by the Defendants, and the unauthorized, generic lenalidomide drugs offered for sale through the Infringing Websites, are not manufactured by Celgene, and no association or relationship exists between Celgene and the Defendants.

48. The Defendants' unauthorized use of the REVLIMID® mark deceives the consumer into believing that they are purchasing genuine Celgene drugs.

49. The Defendants' unauthorized use of the REVLIMID® mark falsely suggests the existence of an association or sponsorship relationship with Celgene.

50. The Defendants' use of the REVLIMID® mark will likely result in consumer confusion in the marketplace with regards to the source and/or sponsorship of the REVLIMID® drugs.

51. Given the restricted distribution limitations mandated by the FDA in connection with the REVLIMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic effects.

52. The Defendants' continued use of the REVLIMID® mark is undermining Celgene's brand identity and the positive public perception of Celgene's REVLIMID® drugs. Celgene's goodwill is extremely valuable to Celgene and the Defendants' continued unauthorized use of REVLIMID® is harming Celgene.

53. The Defendants have not received authorization or obtained a license from Celgene to use any of Celgene's trademarks. Similarly, Celgene has not acquiesced to the Defendants' use of the REVLIMID® mark.

54. Despite receiving numerous correspondences notifying them of their infringing activities, the Defendants, through the Infringing Websites, willfully continue to use the REVLIMID® mark without authorization and willfully continue to distribute lenalidomide without authorization and outside of the FDA-mandated restricted distribution program.

55. The Defendants' activities are likely to cause confusion or mistake among prospective consumers, are likely to dilute Celgene's REVLIMID® mark, and are likely to mislead and/or deceive prospective consumers with respect to the origin and quality of the lenalidomide sold at the Infringing Websites.

56. The Defendants' unauthorized use of Celgene's REVLIMID® mark constitutes unfair competition.

57. The Defendants' unauthorized distribution of lenalidomide, in conjunction with Celgene's REVLIMID® mark constitutes unfair competition.

58. The Defendants' unauthorized distribution of lenalidomide results in serious health and safety issues directly related to Celgene's REVLIMID® drug that will irreparably damage the goodwill inherent in Celgene's REVLIMID® mark.

## COUNT I – TRADEMARK INFRINGEMENT

59. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

60. The federal registrations of Celgene's REVLIMID® mark evidences Celgene's exclusive right to use its REVLIMID® mark in connection with pharmaceutical preparations, namely, cytokine inhibitory drugs; and pharmaceutical preparations that modulate the immune system. 15 U.S.C. § 1115.

61. The federal registrations for Celgene's REVLIMID® mark conclusively evidence the validity of the registered marks, Celgene's ownership of marks, and Celgene's exclusive right to use the REVLIMID® mark in commerce. 15 U.S.C. §§ 1065, 1115.

62. The Defendants' utilize, without authorization, the REVLIMID® mark in connection with the unauthorized sale of lenalidomide.

63. The Defendants' use of REVLIMID is identical in sound, meaning and appearance to Celgene's REVLIMID® mark. The marks create the same commercial impression and are confusingly similar.

64. The Defendants are marketing and distributing lenalidomide using the name REVLIMID® to consumers in the United States.

65. The Defendants' adoption and use of the REVLIMID® mark in connection with the sale of lenalidomide is likely to cause confusion, or mistake, or to deceive as to the source, affiliation, or sponsorship with Celgene's REVLIMID® mark in violation of 15 U.S.C. § 1051 et seq., specifically §§ 1114-18.

66. This unauthorized use by the Defendants constitutes infringement of Celgene's registered marks, described above, in violation of 15 U.S.C. § 1051 et seq., to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill.

67. The activities of the Defendants complained of herein constitute willful and intentional infringement of Celgene's federally registered REVLIMID® mark, in derogation of Celgene's rights in violation of 15 U.S.C. §§ 1114-18. Acts of infringement commenced and have continued in spite of the Defendants' knowledge that the use of Celgene's REVLIMID® mark was and is in contravention of Celgene's rights.

68. Celgene has not given the Defendants consent directly or indirectly to use the REVLIMID® mark, or any mark similar thereto.

69. The Defendants' conduct has caused and, if not enjoined, will continue to cause, irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

70. Celgene's damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

71. Celgene seeks attorney's fees and costs given the willful conduct of the Defendants.

72. Celgene seeks treble damages given the willful conduct of the Defendants.

## COUNT II – FEDERAL UNFAIR COMPETITION

73. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

74. Celgene's REVLIMID® mark are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

75. The Defendants utilize, without authorization, the REVLIMID® and marks in connection with the unauthorized sale of lenalidomide.

76. The lenalidomide drugs offered for sale by the Defendants are not manufactured by Celgene, and no association or relationship exists between Celgene and the Defendants.

77. Given the restricted distribution limitations mandated by the FDA in connection with the REVLIMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic effects.

78. Celgene has not given consent directly or indirectly to the Defendants to use its REVLIMID® mark, or any mark similar thereto.

79. The Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Celgene's reputation and goodwill.

80. The Defendants have unfairly competed with Celgene in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designation REVLIMID and by selling lenalidomide outside the mandated restricted distribution programs and in violation of required health and safety guidelines. This unauthorized use by the Defendants constitutes unfair competition to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill. 15 U.S.C. § 1125.

81. The activities of the Defendants complained of herein constitute willful and intentional tort, in derogation of Celgene's rights. Acts of unfair competition commenced and

have continued in spite of the Defendants' knowledge that the use of Celgene's REVLIMID® mark was and is in contravention of Celgene's rights.

82. The Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

83. Celgene's damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

84. Celgene seeks attorney's fees and costs given the willful conduct of the Defendants.

85. Celgene seeks treble damages given the willful conduct of the Defendants.

## COUNT III – FALSE DESIGNATION OF ORIGIN

86. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

87. This cause of action is for false designation of origin pursuant to 15 U.S.C. § 1125 *et seq.*

88. Celgene's REVLIMID® mark are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

89. The Defendants utilize, without authorization, the REVLIMID® mark in connection with the sale of unauthorized lenalidomide.

90. The lenalidomide drugs offered for sale by the Defendants are not manufactured by Celgene, and no association or relationship exists between Celgene and the Defendants.

91. Given the restricted distribution limitations mandated by the FDA in connection with the REVLIMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic effects.

92. Celgene has not given the Defendants consent directly or indirectly to use its REVLIMID® mark, or any marks similar thereto.

93. The Defendants' adoption and use of the REVLIMID® mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Defendants with Celgene, and Celgene is likely to be damaged by such actions. Accordingly, such conduct constitutes false designation of origin under Section 43(a) of the Lanham Act.

94. The Defendants have caused confusion in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the REVLIMID designation and by selling lenalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

95. The Defendants had knowledge of the falsity of the designation of origin in that they knew, among other things, of Celgene's reputation and goodwill developed through Celgene in its REVLIMID® mark.

96. These actions of the Defendants are likely to confuse, mislead, and deceive members of the public as to the origin or sponsorship of the Defendants and Celgene in violation of 15 U.S.C. § 1125(a).

97. The aforementioned activities by the Defendants constitute unfair competition and unfair trade practices, and are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1125(a).

98. The Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

99. Celgene's damages from the aforesaid unlawful actions of the Defendants, to the extent ascertainable, have not yet been determined.

100. Celgene seeks attorney's fees and costs given the willful conduct of the Defendants.

101. Celgene seeks treble damages given the willful conduct of the Defendants.

**COUNT IV – VIOLATION OF NEW JERSEY DECEPTIVE TRADE PRACTICES ACT**

102. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

103. The Defendants have practiced deceptive business and trade practices in this district by various acts, including marketing, offering for sale, and selling lenalidomide under the designation REVLIMID® and by selling lenalidomide outside of the mandated restricted distribution programs and in violation of required health and safety guidelines.

104. The Defendants' aforesaid conduct constitutes unfair, unlawful, and deceptive business and trade practices in violation of N.J. Stat. § 56:8-2.

105. Many of these wrongful acts occurred in the State of New Jersey and harmed the New Jersey public at large.

106. These wrongful acts have proximately caused and continue to cause Celgene substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products and technology. These actions will cause imminent irreparable harm and injury to Celgene, the amount of which will be difficult to ascertain, if they continue.

107. Celgene is without an adequate remedy at law.

108. Celgene is entitled to an injunction restraining the Defendants, and all persons or entities acting in concert with it, from engaging in further such unlawful and deceptive conduct.

109. Celgene is entitled to recover from the Defendants the damages sustained by it as a result of the Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time.

110. Celgene is further entitled to recover from the Defendants the gains, profits, and advantages it has obtained as a result of their wrongful acts as hereinabove alleged. Celgene is at present unable to ascertain the full extent of these gains, profits, and advantages, but Celgene is informed and believes and based thereon alleges that the Defendants have obtained such gains, profits, and advantages in an amount thus far undetermined, but in excess of $75,000.

111. The conduct of the Defendants was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Celgene, and Celgene is therefore entitled to punitive damages against the Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE**, Celgene prays for relief against the Defendants as follows:

(1) That the Court preliminary and permanently enjoin and restrain the Defendants, their officers, directors, agents, employees and all persons in active concert or participation with it who receives actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

    (a) infringing, inducing or contributing to the infringement of Celgene's intellectual property;

    (b) engaging in any acts or activities directly or indirectly calculated to infringe the REVLIMID® mark;

    (c)  using in selling, offering for sale, promoting, advertising, marketing or distributing of press releases, articles, advertisements or marketing materials that infringe upon Celgene's rights;

    (d)  using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the REVLIMID® mark;

    (e)  otherwise competing unfairly with Celgene; and

    (f)  otherwise acting unlawfully and/or deceptively in the Defendants' trade practices.

  (2)  That the Court find that the Defendants are infringing upon Celgene's REVLIMID® mark, are falsely designating the origin of their goods, are competing unfairly with Celgene, and/or are acting unlawfully and/or deceptively in Defendants' trade practices.

  (3)  That the Court Order the Defendants to deliver up to Celgene for destruction, at the Defendants' expense, all newsletters, articles, web site materials, literature, brochures, promotional materials, advertisements and other communications to the public in the possession or under the control of the Defendants, and any other material or any representations that are or may contain designations similar to the REVLIMID® mark.

  (4)  That the Court Order the Defendants to account for and pay to Celgene the damages to which Celgene is entitled as a consequence of the infringement.

  (5)  That the Court Order the Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Defendants' unfair competition.

  (6)  That the Court Order the Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Defendants' false designation of origin.

  (7)  That the Court Order the Defendants to account for and pay over to Celgene all profits received by the Defendants from their unlawful acts, and for their deceptive trade

practices, in an amount consisting of the gains, profits, and advantages the Defendants have obtained as a result of their wrongful acts as hereinabove alleged, which damages will be proven with greater precision at trial.

(8) That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of the Defendants so as to prevent fraud on the Court and so as to ensure the capacity of the Defendants to pay, and the prompt payment of, any judgment entered against the Defendants in this action.

(9) That the Court award Celgene its compensatory, incidental, and consequential damages.

(10) That the Court award Celgene enhanced, treble, and/or punitive damages.

(11) That the Court award Celgene its reasonable attorney's fees and the costs of this action.

(12) That the Court grant Celgene such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Celgene demands a trial by jury on all triable issues of fact.

Dated: July 20, 2017

Respectfully submitted by:

COZEN O'CONNOR

/s/ Melanie A. Miller
Melanie A. Miller (MM 2992)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

and

Camille M. Miller (to be admitted pro hac vice)
J. Trevor Cloak (to be admitted pro hac vice)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-7273 – Telephone
(215) 701- 2273 – Facsimile
cmiller@cozen.com – E-Mail
jcloak@cozen.com – E-Mail

*Attorneys for Plaintiff, Celgene Corporation*